UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMAS F., JR., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 20-cv-2430-KSC <br><br> **ORDER ON JOINT MOTION FOR JUDICIAL REVIEW** <br><br><br> **[Doc. No. 18]** |

On December 14, 2020, plaintiff Tomas F., Jr. ("plaintiff") filed a complaint seeking judicial review of defendant's denial of his application for disability benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review (the "Joint Motion" or "Jt. Mot."). Doc. No. 18. In the Joint Motion, plaintiff requests to have his application for benefits remanded to the Social Security Administration (the "Administration") for further proceedings, and defendant ("defendant" or the "Commissioner") moves to have her determination that plaintiff is not disabled affirmed. *See generally id.* The Court has carefully considered the parties' arguments, the applicable law, and the evidence in the record. For the reasons stated below, plaintiff's request for remand is **DENIED** and the judgment of the Commissioner is **AFFIRMED**.

# I. BACKGROUND

**A. Plaintiff's Medical Condition and History[1]**

Plaintiff is a 60-year-old male with a history of intravenous heroin use. *Id.* at 470-71, 1170. He was incarcerated between 2010 and 2018. AR at 38-39. During his incarceration, plaintiff was treated on multiple occasions for infectious wounds he developed after injecting with heroin in his cell. *Id.* at 302-03, 1269-71, 1315. Plaintiff's prison medical records indicate that he had muscle wasting and reflex sympathetic dystrophy of his left arm, secondary to his drug use. *Id.* at 1315-16. Plaintiff's prison medical records also indicate occasional complaints of bilateral foot pain, for which he was prescribed naproxen and orthotic inserts. *See id.* at 299-300, 1268, 1289. Plaintiff was released from prison in March 2018. *Id.* at 38.

Records from Family Health Centers of San Diego dated June 2018 to April 2019 reflect plaintiff's recurring complaints of bilateral foot pain and tingling, pain in his left wrist and shoulder, and numbness and reduced grip strength in his left hand. *Id.* at 470-71, 473-74, 476, 484-86, 496-98. Plaintiff was diagnosed with carpal tunnel syndrome and idiopathic peripheral neuropathy. *Id.* X-rays and other imaging showed periarticular osteopenia in the left wrist and early signs of arthritis in the left hand but were otherwise normal. *Id.* at 366, 384, 385.

On December 20, 2018, plaintiff presented to the emergency room after a heroin needle broke and became embedded in his left shoulder, causing an abscessed wound and necrosis of the surrounding soft tissues. *See id.* at 1173-76. Plaintiff underwent emergency surgery for debridement of the left shoulder. *See id.* He remained at Parkway Nursing and Rehabilitation through January 25, 2019, where he received ongoing medical care and physical and occupational therapy. *See id.* at 1170, 1173-76.

---

[1] The following medical chronology is based on the Court's review of the Certified Administrative Record (hereafter "AR"). The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers generated by the Court's CM/ECF system.

On May 9, 2019, plaintiff presented to the emergency department Sharp Chula Vista Medical Center and was found to have extensive cellulitis and an antibiotic-resistant ("MRSA") infection in his left arm. *Id.* at 1059-62. Results of a CT scan of his left forearm showed a "massive multilocated abscess extending from the mid left upper arm to the wrist." *Id.* at 655. Plaintiff was admitted to the hospital, and between May 9, 2019 and May 17, 2019 underwent the following procedures: drainage of left upper and lower arm, excision and/or repair of muscles in arm and wrist, blood transfusion, skin graft, incision, drainage and debridement of hand and arm. *See id.* at 660-84. On May 23, 2019, plaintiff was transferred to Lemon Grove Care and Rehabilitation Center, where he received further medical care, physical therapy, and occupational therapy, either on an inpatient or outpatient basis, through July 2019. *See, e.g., id.* at 1059-62, 1085, 1089, 1119, 1124-25, 1128.

### B. Plaintiff's Application for Disability Benefits

On April 25, 2018 plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act") and Supplemental Security Income under Title XVI of the Act. *Id.* at 15. In both applications, plaintiff alleged an onset date of May 1, 2004, which was later amended to July 29, 2016. *Id.* at 15, 58. After his application was denied at the initial stage and upon reconsideration, plaintiff requested and was given a hearing before an administrative law judge ("ALJ"). *Id.* The hearing was held on October 30, 2019. *Id.* at 31-57. Plaintiff appeared with counsel and gave testimony, and a vocational expert also testified. *Id.* In a decision dated January 15, 2020, the ALJ concluded that plaintiff was not disabled within the meaning of the Act. *Id.* at 26. The Appeals Council denied review, and the ALJ's decision became final on October 9, 2020. *Id.* at 1-5.

///
///
///
///
///

**C. Summary of the ALJ's Findings**

The Administration employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Social Security Act.[2] ALJ Kevin W. Messer, who adjudicated plaintiff's claim, followed this five-step process in rendering his decision. *See generally* AR at 15-26. At step one, the ALJ found Plaintiff did not engage in substantial gainful activity from the alleged date of the onset of Plaintiff's disability through the date of the ALJ's decision. *Id*. at 18.

At step two, the ALJ found that Plaintiff had the following severe impairments: peri-articular osteopenia of the left wrist, degenerative joint disease of the left hand, peripheral neuropathy, and left-handed carpal tunnel syndrome. *Id*. at 18. The ALJ further found that these medically determinable impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. However, as to plaintiff's other alleged impairments, the ALJ found them to be non-severe, not medically determinable, or not an impairment *per se* but a symptom of an impairment.[3] *Id*.

---

[2] *See* 20 C.F.R. §§ 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the ALJ finds the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, § 404.1520(a)(4)(v). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citation omitted).

[3] These included: head injury, left arm limited mobility, "left knee small limit," hepatitis C, hepatic encephalopathy, abscesses in bursa of the left shoulder, cellulitis of the left upper extremity, compartment syndrome, plantar fasciitis, insomnia, and opioid abuse.

4

At step three, the ALJ found that none of plaintiff's medically determinable impairments alone or in combination met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments. *Id*. at 20-21.

Proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform "medium work" with some exceptions based on his physical impairments, as follows:

> . . . the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can climb ramps and stairs, ladders, ropes and scaffolds frequently, he can frequently balance, stoop, kneel, crouch and crawl, and he cannot engage in more than frequent handling and fingering with the left upper extremity.

*Id.* at 21. As discussed in more detail below, in assessing plaintiff's RFC, the ALJ considered medical opinions in the record from Dr. Pomerantz (a treating provider) and Dr. Kanner (a consultative examiner) and the prior administrative medical findings of Dr. Gilpeer (a non-examining physician).[4] *See id.* at 23-24. The ALJ found some of this evidence persuasive but rejected other opinions as to plaintiff's limitations as inconsistent with the objective medical record. *See id.*[5] The ALJ also considered plaintiff's subjective symptoms and limitations and found that while plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, plaintiff's subjective assessment of the limiting effects of those symptoms was neither "entirely consistent" nor "entirely supported" by the objective record. *Id.* at 22. To the extent

---

[4] A "prior administrative medical finding" is "a finding, other than the ultimate determination about whether [the claimant] [is] disabled, about a medical issue" by an agency medical consultant at a prior level of review "based on their review of the evidence in [the] case record." *See* 20 C.F.R. § 404.1513(a)(5). Prior administrative medical findings are evaluated by the same standards as medical opinions, *see* 20 C.F.R. § 404.1520c(a), and for ease of reading the Court may occasionally refer to Dr. Gilpeer's prior administrative medical findings as an "opinion."

[5] The ALJ did not evaluate a statement from T. Do, M.D., who reviewed plaintiff's medical records but determined that the evidence was insufficient to form any findings. *See* AR at 24.

plaintiff's subjective testimony was consistent with the objective medical record, those limitations were incorporated into the RFC. *Id*. at 22-23. The ALJ determined that plaintiff did not have any past relevant work for evaluation. *Id*. at 24.

At step five, the ALJ considered plaintiff's age, education, work experience, and previously determined RFC and determined that plaintiff is "capable of making a successful adjustment to . . . work that exists in significant numbers in the national economy." *Id*. at 26. In making this determination, the ALJ relied on the testimony of a vocational expert, who identified medium-work positions that could be performed by a person with plaintiff's limitations.[6] *Id*. at 25; *see also id*. at 52-54 (vocational expert's hearing testimony).

Based upon the foregoing analysis and findings, the ALJ concluded that plaintiff had not been under a disability within the meaning of the Act since July 29, 2016. *Id.* at 26. Accordingly, his application for benefits was denied. *Id*.

## II. DISPUTED ISSUES

The sole disputed issue is whether the ALJ adopted the proper RFC. Jt. Mot. at 6. Plaintiff claims that the ALJ's RFC is "unsupported by either medical opinion or medical evidence." *Id.* at 7. Specifically, plaintiff asserts that the ALJ "failed to properly consider, and provide adequate reasons to reject," the opinions of Drs. Kanner and Pomerantz, and further that the ALJ erred in his assessment of Dr. Gilpeer's opinion. *See id.* at 7-12. Plaintiff also claims that the objective medical evidence "does not support the ALJ's finding that plaintiff has the [RFC] to perform medium work and engage in no more than frequent handling and fingering with [his] left upper extremity." *Id.* at 12-14. Plaintiff requests that the Court reverse the ALJ's decision, or, alternatively, remand the matter back to the Administration for further proceedings. *Id.* at 30-31.

---

[6] These included medium work as a laundry worker (DOT #361.684-014), hospital food service worker (DOT #319.677-014), or hand packager (DOT #920.587-018).

Defendant argues that the ALJ "properly synthesized the weight of the evidence, including the medical opinions," in determining plaintiff's RFC. *Id.* at 22. Defendant points out that the standards for evaluating medical opinions have changed and that under the new regulations, "all medical opinions begin on equal footing," with no special deference owed on account of the source's relationship with the claimant. *See* Jt. Mot. at 19. Defendant states that the ALJ appropriately evaluated the assessments of plaintiff's limitations by Drs. Gilpeer, Kanner and Pomerantz for supportability and consistency, and "reasonably concluded that Dr. Gilpeer's assessment was the most persuasive . . . ." *Id.* at 22. Defendant further asserts that the ALJ's "evaluation was proper and supported by substantial evidence, and [p]laintiff fails to establish otherwise." *Id.* at 23. Defendant therefore requests that the Court affirm the Commissioner's decision to deny benefits. *Id.* at 33.

### III.  STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (citing *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *See id*. However, the Court cannot uphold the Commissioner's decision for reasons "'the agency did not invoke in making its decision.'" *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). The Court may affirm an erroneous decision if it "is clear from the record that [the] error was inconsequential to the ultimate nondisability determination." *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

///

///

## IV. DISCUSSION

### A. The ALJ Properly Considered the Opinion Evidence

As defendant correctly observes, the "[r]egulatory [f]ramework" for evaluating medical opinion evidence, which applies to all claims filed after March 27, 2017, "eliminate[s] any semblance of a hierarchy of medical opinions . . .." Jt. Mot. at 14 (citing 20 C.F.R. § 404.1520c(a)). Under the regulations, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." *Id.* Instead, the ALJ must evaluate the persuasiveness of each opinion in relationship to the record. *See* 20 C.F.R. § 404.1527(b) (explaining that "[i]n determining whether [a claimant is] disabled, [the Administration] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [it] receive[s]"). The "most important factors" the ALJ must consider in doing so are "supportability" (i.e., whether the provider supported his or her opinion with citations to objective findings) and "consistency" (i.e., whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *see also id.* at § 404.1520c(c)(1) and (2) (defining "supportability" and "consistency"). With these considerations in mind, the Court turns to the ALJ's evaluation of the opinions and findings in the record.

### 1. *Dr. Pomerantz's Opinion*

The ALJ first considered the medical source statement of Dr. Pomerantz, the orthopedic surgeon who performed the debridement, muscle repair and skin grafting procedures on plaintiff's left arm in May 2019. *See* AR at 24, *id.* at 1053-56. The statement is a check-the-box and fill-in-the-blank form and was signed by Dr. Pomerantz on August 29, 2019. *See id.* Dr. Pomerantz indicated on the form that plaintiff could lift and carry no more than ten pounds and noted that plaintiff had "limited range of motion" in, and "limited use" of, his left upper extremity. *Id.* at 1054-55. Dr. Pomerantz stated that due to "weakness and decreased range of motion" in his arm, plaintiff would be off task for up to 15% of the workday. *Id.* at 1056. Dr. Pomerantz stated that plaintiff could sit, walk or stand at least six

hours in an eight-hour workday, and indicated that plaintiff did not require assistive devices or environmental restrictions. *Id*. at 1055. He further assessed that plaintiff could climb, balance, kneel, crouch, crawl, finger, and handle occasionally (defined as up to one-third of the day). *Id.*

The ALJ found Dr. Pomerantz's opinion was "not persuasive" because it was "inconsistent with the objective record." *Id*. at 23. Specifically, the ALJ found that Dr. Pomerantz's assessment that plaintiff was limited to lifting and carrying less than 10 pounds and only occasional postural movements was not consistent with objective findings in the record indicating plaintiff had normal strength, "unremarkable" imaging studies and the ability to do work-related activities such as sweeping and mopping. *Id.*

Plaintiff asserts that the ALJ thereby "overlooked" evidence supportive of Dr. Pomerantz's opinion and instead "isolated specific instances that showed less severe findings." Jt. Mot. at 9. Plaintiff further asserts that the ALJ "did not provide specific and legitimate reasons" for rejecting Dr. Pomerantz's opinion. *Id.* at 11.

The Court disagrees. Contrary to plaintiff's charge that the ALJ "did not address conflicting clinical evidence," Jt. Mot. at 11, the ALJ cited several objective facts that were inconsistent with Dr. Pomerantz's opinion. AR at 23. The Court also notes that the ALJ's discussion of Dr. Pomerantz's opinion immediately follows his evaluation of plaintiff's subjective testimony, throughout which the ALJ addressed evidence that both supported and contradicted plaintiff's claims regarding the limiting effects of his impairments, which were the same or similar in many respects as the limitations assessed by Dr. Pomerantz. *See id.* at 21-23. The ALJ took notice of records indicating plaintiff's "atrophy" and "decreased grip strength" (*see id.* at 22) – the same records plaintiff claims the ALJ "overlooked." Jt. Mot. at 9. Indeed, as defendant points out, "the ALJ specifically addressed" this evidence and "properly accounted for attendant limitations by reducing the range of work [p]laintiff could perform" in his RFC. Jt. Mot. at 26. However, the ALJ found that further limitations were not warranted based on records demonstrating plaintiff's ability to make a fist and oppose his thumb, his normal strength and gait, and plaintiff's

own testimony that he could mop, sweep, use a telephone, and drive a car. *See* AR at 22. The ALJ found that this evidence "suggest[ed] that [plaintiff's] symptoms and conditions are not as debilitating as alleged." *Id.* The Court is not persuaded that the ALJ failed to "address the conflicting clinical evidence" in the record, Jt. Mot. at 11, simply because he did not repeat this analysis on the next page of the decision. *See* AR at 22, 23.

Finally, the ALJ also observed that Dr. Pomerantz provided very little in the way of objective findings or results of examination to support his opinions. *See id.* at 23. The ALJ was not required to "take [Dr. Pomerantz's] opinions at face value" and could "permissibly reject [his] check-off report[] that [did] not contain any explanation of the bases of [his] conclusions." *Ford*, 950 F.3d at 1155.

For the above reasons, the Court finds the ALJ adequately articulated "specific and legitimate reasons" for finding Dr. Pomerantz's opinion unpersuasive. *Coleman*, 979 F.3d at 757 (finding the ALJ "did not err in concluding that the opinions assessing severe limitations were unsupported by the record, thus furnishing a specific and legitimate reason to discount [them]") (citation omitted). Furthermore, the Court observes Dr. Pomerantz's statement indicated that plaintiff's condition had not lasted, and was not expected to last, more than 12 months. *See id.* at 1056. The Court therefore further finds that any error in the ALJ's consideration of Dr. Pomerantz's opinion was harmless, as the opinion does not support a determination that plaintiff is disabled within the meaning of the Act. *See* 42 U.S.C. § 423(d)(1)(A) (defining "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months); *see also* 20 C.F.R. § 404.1505(a) (same).

2. *Dr. Kanner's Opinion*

The ALJ next considered the opinion of consultative examiner Amy Kanner, M.D., dated September 4, 2018. *See* AR at 354-62. Dr. Kanner, an internist, examined plaintiff at the request of the Administration. *See id.* at 354. Her report reflects findings of muscle atrophy in the left hand, forearm and upper arm, poor range of motion in the left wrist, and

poor range of motion of the left wrist. *Id.* at 360. Dr. Kanner noted that plaintiff was "quite slow" to touch his fingers together on the left side but was able to make a fist and oppose the thumbs. *Id.* at 359. Finger approximation and grip strength on the right side were normal. *Id.* Dr. Kanner's findings also included "neuropathy (per claimant) of feet," and a reported left knee injury, but she noted that findings on examination were within normal limits. *Id.* at 360. Dr. Kanner's neurologic findings were as follows:

> Motor: Good tone bilaterally, with good active motion. Strength is 5/5 in all extremities except: left hand grip strength 3/5, left shoulder abduction 3/5 versus resistance, and left elbow flexion and extension versus resistance 3-4/5.
>
> Sensory: Sensation is intact in upper and lower extremities including the feet.
> ***
> Station and Gait: Gait is within normal limits. The claimant is able to stand on heels and toes and perform tandem gait. The claimant does not require the use of an assistive device to walk across the exam room.

*Id.* As to plaintiff's functional ability, Dr. Kanner assessed that plaintiff could occasionally lift and carry 20 pounds, frequently carry ten pounds, and occasionally bend, stoop, and crouch, but could never crawl, climb ropes or ladders. *Id.* at 361. She further stated that plaintiff had no limitations to his ability to manipulate on the right side, and no limitations to overhead or other reaching on the left side, but that handling and fingering with the left hand were limited to frequent. *Id*.

    The ALJ found Dr. Kanner's opinion to be only "partially consistent with the record" and therefore "not persuasive." *Id.* at 24. In particular, the ALJ found that Dr. Kanner's assessment that plaintiff was able to perform handling and fingering frequently was consistent with objective findings of normal strength and sensation and "generally unremarkable" imaging studies of plaintiff's hands and wrists. *Id.* However, the ALJ found that Dr. Kanner's opinion that plaintiff was limited to performing "light" work was "too conservative" and "not consistent" with the record. *Id.* Accordingly, the ALJ found Dr. Kanner's opinion was "not persuasive." *Id.* Although he did not find Dr. Kanner's opinion

persuasive, the ALJ noted that her opinion "supports some of the residual functional capacity" as articulated by the ALJ. *Id.*

Plaintiff argues that Dr. Kanner's opinion is "reliable" – indeed, the "most reliable" of the three opinions the ALJ considered – and should have been given more weight by the ALJ. Jt. Mot. at 8. Plaintiff also asserts, as with Dr. Pomerantz's opinion, that the ALJ "overlooked" evidence of plaintiff's atrophy, decreased strength, and decreased range of motion in his left upper extremity, including "[r]ecords as far back as August 2016 and November 2016" that document "muscle wasting and atrophy in the left hand." *Id.* at 8-9.

As an initial matter, the regulations do not require the ALJ to assess a medical source's opinion for "reliability." *See id.* Instead – and as plaintiff acknowledges – the ALJ must evaluate opinion evidence "for supportability and consistency with the record." *Id.* at 28 (acknowledging that these are "the most important factors" for the ALJ to consider) (citing 20 C.F.R. § 404.1520c(b)(2) and 20 C.F. R. 416.920c(b)(2)). Consistent with these regulations, the ALJ carefully reviewed the medical evidence and plaintiff's testimony. *See* 20 C.F.R. § 416.920(a)(3) (ALJ must consider all evidence in determining whether the claimant is disabled). The ALJ then determined that the record supported some degree of limitation, but that the "conservative" limitations assigned by Dr. Kanner were not supported. *See* AR at 21-24. The ALJ identified findings in the record that were inconsistent with Dr. Kanner's limitations, both when addressing Dr. Kanner's opinion and throughout his statement of decision. *See* AR at 21-24. The contradictions between Dr. Kanner's opinion and other evidence in the record, as identified by the ALJ, are "specific and legitimate reasons" for discounting Dr. Kanner's opinion. *Ford*, 950 F.3d at 1154 (citation omitted).

Furthermore, the Court is (again) unpersuaded by plaintiff's argument that the ALJ merely "isolated specific instances that showed less severe findings" and "failed to consider the whole record," including certain evidence that supported Dr. Kanner's opinion. Jt. Mot. at 9. The ALJ described in detail those portions of the record that supported his decision and acknowledged the contrary evidence while explaining his

reasons for finding that evidence unpersuasive. *See* AR at 21-24. He was not required to explicitly address every item of evidence in the record. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (noting that "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence'") (citations omitted).

For the above reasons, the Court finds the ALJ provided sufficiently specific and legitimate reasons for finding Dr. Kanner's opinion unpersuasive.

### 3. Dr. Gilpeer's Opinion

Finally, the ALJ considered the prior administrative medical findings of E. Gilpeer, M.D., who reviewed plaintiff's medical records in October 2018 "at the request of [the] agency." AR at 24. Based on his review, Dr. Gilpeer opined that plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and could sit, stand and walk for six hours in an eight-hour workday. *Id.* at 97-98. Dr. Gilpeer also stated plaintiff could frequently perform all postural movements. *Id.* He noted that plaintiff had "limited" ability to manipulate objects with his left hand, and therefore that handling and fingering should only be performed frequently. *See id.* at 98-99. Explaining the basis for his conclusions, Dr. Gilpeer identified the following findings from Dr. Kanner's physical examination: normal range of motion in shoulders, right elbow, right wrist, hips, knees and ankles; flexion and extension normal in left elbow; left wrist dorsiflexion of 15 degrees and palmar flexion of 30 degrees. *Id.* at 98. Dr. Gilpeer also noted that strength testing was normal in the right upper extremity and both lower extremities, and that although strength was diminished in the left upper extremity, "there is good tone bilaterally with good active motion, the sensation is intact in all extremities, the reflexes are normal throughout and the coordination is intact." *Id.* Dr. Gilpeer further cited findings that plaintiff's gait was normal and that he was able to get in to and out of a chair without difficulty. *Id.* at 98-99. Commenting on diagnostic imaging, Dr. Gilpeer noted that x-rays of the left hand showed only "early" findings that were "confined to the distal interphalangeal joints," that the "rest
///

of the joints spaces were normal," and that the x-rays of plaintiff's left wrist were "unremarkable." *Id.* at 99.

The ALJ found Dr. Gilpeer's opinion "persuasive," noting that he supported his findings with citations to the objective medical record. *Id.* at 24. The ALJ also found that Dr. Gilpeer's assessments and findings were consistent with the objective evidence, specifically referencing records documenting "decreased sensation and grip strength and some atrophy." *Id.* The ALJ also found that plaintiff's RFC was "supported by the prior administrative medical findings of Dr. Gilpeer . . .." *Id.*

Plaintiff argues that Dr. Gilpeer's prior administrative medical findings were "not reliable" and should not have been given consideration, because Dr. Gilpeer "admitted that '[t]here was *insufficient evidence in the file* to evaluate [plaintiff's] physical allegations.'" Jt. Mot. at 10. Plaintiff further asserts that Dr. Gilpeer's assessment should have been discounted because he "was not familiar with any of the other information in the case record" after he rendered his assessment in October 2018. Jt. Mot. at 10-11 (alterations and emphasis in original).

A close review of Dr. Gilpeer's opinion disposes of plaintiff's contention that "[b]ased on his own admission," Dr. Gilpeer did not have sufficient evidence from which to form an opinion. *Id.* at 11. Plaintiff cites to Dr. Gilpeer's statement on September 13, 2018, that "there is insufficient evidence in the file to evaluate the physical allegations. C[onsultative] E[xaminer] *x-rays of the left wrist and the left hand are needed for this purpose*." AR at 96 (emphasis added); *see also* Jt. Mot. at 10 (citing AR at 96). When Dr. Gilpeer formulated his assessment on October 18, 2018 – over a month later – he plainly had the requested x-rays for review, as he commented extensively on the findings contained therein. *See id.* at 97-98.

In his October 2018 report, Dr. Gilpeer also noted that "*concerning the DIB claim*, there is insufficient evidence in the file through the date last insured" to evaluate the claim. AR at 95 (emphasis added). However, as defendant correctly notes, this comment relates to plaintiff's eligibility for Disability Insurance Benefits ("DIB"), which would require

plaintiff to show that "he was insured for benefits when he became disabled." Jt. Mot. at 26 (citing 42 U.S.C. § 423(c)). Because the file reviewed by Dr. Gilpeer did not contain information to established that he became disabled before his date last insured (December 31, 2016), Dr. Gilpeer could not assess plaintiff's DIB eligibility. *See id.* In reply, plaintiff acknowledges that records from 2016 were not available to Dr. Gilpeer, but states that "records from that period were available when the ALJ adjudicated the case." Jt. Mot. at 29. While that may be true, it is not a basis on which to conclude that Dr. Gilpeer's opinion was "not reliable." Jt. Mot. at 10. The ALJ found Dr. Gilpeer's opinion adequately supported and consistent with the objective record, and therefore worthy of consideration. AR at 24. The Court finds no error in that conclusion.

The Court is also unpersuaded by plaintiff's further assertion that the additional, earlier medical records "support Dr. Kanner's physical examination," and not Dr. Gilpeer's assessment. *Id.* at 29. For the reasons explained above, the ALJ determined otherwise and cited to objective evidence in the record to support that conclusion. The Court agrees with defendant that "the ALJ's interpretation of the medical evidence governs, not [p]laintiff's interpretation." Jt. Mot. at 25 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005)). Having found no error in the ALJ's analysis, it is not for this Court to say whether the ALJ should have favored Dr. Kanner's conclusions over Dr. Gilpeer's. *See Ahearn* 988 F.3d at 1115.

In sum, the Court finds that the ALJ did not err in his consideration of the medical opinions of Drs. Pomerantz and Kanner and Dr. Gilpeer's prior administrative findings. Because the Court finds no error in the ALJ's evaluation of this evidence, it does not reach plaintiff's further argument that if Dr. Kanner's or Dr. Pomerantz's opinions were "credited as true," plaintiff would be deemed disabled. *See* Jt. Mot. at 30.

**B. Substantial Evidence Supports the ALJ's Decision**

The Court has independently reviewed the record, and based on that review, finds that the ALJ's RFC is supported by substantial evidence.

///

The objective medical evidence confirms plaintiff's diagnoses of peri-articular osteopenia of the left wrist, degenerative joint disease of the left hand, peripheral neuropathy, and left-handed carpal tunnel syndrome. *See, e.g.,* AR at 316, 473-74, 481-86, 496-98. Medical records from plaintiff's incarceration document that he had reflex sympathetic dystrophy that was "resolved and not of any significance," and his care providers at the time noted that plaintiff was "functioning very well and working in the [prison] laundry . . . with no significant complaints or apparent injuries." *See id.* at 1312, 1316. Post-incarceration medical records document occasional complaints of pain in his feet and hands and numbness in his left hand, although he denied muscle or joint pain on several occasions. *See, e.g., id.* at 317-19, 487, 496-98; 1064-71. Records of plaintiff's two hospitalizations also document decreased range of motion and strength in the left upper extremity, although this appears to be a result of his recent surgeries rather than his alleged impairments.[7] In any event, his condition was improved with physical and occupational therapy. *See, e.g.,* AR at 1059-62, 1089, 1100-05, 1213-15, 1224-25. He reported to his care providers in 2019 that he was independent with all activities of daily life and denied needing assistance to walk. *See, e.g., id.* at 1072-75, 1108-09. The Court finds the foregoing is relevant and substantial evidence that is adequate to support the ALJ's conclusion that the objective medical record was inconsistent with Dr. Kanner's and Dr. Pomerantz's opinions and was consistent with Dr. Gilpeer's prior administrative findings. The Court further finds this evidence supports the ALJ's RFC and his subsequent determination that plaintiff is not disabled.

At the hearing, plaintiff testified that despite his impairments, he was able to shower, dress, drive a car, do "limited" errands, read books, wash dishes, and attend meetings once a week. *See id.* at 38, 41-42, 46-47, 50. He stated he cannot "grab stuff and hold on to it,"

---

[7] The Court agrees with defendant that the procedures performed in 2018 and 2019 to treat plaintiff's abscessed wounds, cellulitis and MRSA were "unrelated to plaintiff's severe medically determinable ailments" of periarticular osteopenia, degenerative joint disease, peripheral neuropathy and carpal tunnel syndrome. *See* Jt. Mot. at 25.

but denied any difficulty lifting things with his right or his left hand, and stated he could walk at least one block without difficulty. *Id.* at 47-48. The Court finds this testimony as to plaintiff's day-to-day activities further supports the ALJ's determination that plaintiff is not disabled. *See Ahearn*, 988 F.3d at 1117 (finding nondisability determination was adequately supported by evidence of the claimant's "daily activities," including using the library, shopping, preparing meals, and performing household chores).

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision was free of legal error and was supported by substantial evidence. Plaintiff's request for reversal and/or remand is therefore **DENIED**. The final decision of the Commissioner of Social Security is **AFFIRMED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

Dated: April 18, 2022

Hon. Karen S. Crawford
United States Magistrate Judge